IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | | |
|---|---|---|
| James R. Strong, | ) | |
| | ) | C/A No. 2:03-2256-MBS |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **O P I N I O N and O R D E R** |
| Jon Ozmint, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

     Plaintiff James Strong is an inmate in the custody of the South Carolina Department of Corrections (SCDC).  He is currently confined to the McCormick Correctional Institute in McCormick, South Carolina.  The events underlying his complaint occurred while Plaintiff was formerly confined to the Maximum Security Unity (MSU) of the Kirkland Correctional Institution in Columbia, South Carolina.  Plaintiff, appearing *pro se*, brings this action pursuant to 42 U.S.C. § 1983, asserting that Defendants violated his rights protected by the United States Constitution. Additionally, Plaintiff claims Defendants violated provisions of the South Carolina Code of Laws as well as internal SCDC guidelines and policies.

     This matter is before the court on Defendants' motion for summary judgment filed on November 22, 2004.  By order filed December 7, 2004 pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to respond adequately.  On January 18, 2005, Plaintiff filed a response in opposition to Defendants' motion for summary judgment.  Plaintiff filed an additional response in opposition to Defendants' motion for summary judgment on May 24, 2005.

In accordance with 28 U.S.C. § 636(b)(1)(b) and Local Civil Rule 73.02(B)(2)(d), this matter was referred to United States Magistrate Judge Robert S. Carr for pretrial handling. The Magistrate Judge filed a Report and Recommendation on May 26, 2005 in which he recommended that summary judgment be granted. Plaintiff filed objections to the Report and Recommendation of Magistrate Judge on July 5, 2005.

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this court. Mathews v. Weber, 423 U.S. 261, 270 (1976). The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge. 28 U.S.C. § 636(b)(1)(C). The district court may also receive further evidence or recommit the matter to the magistrate judge with instructions. Id. The district court is obligated to conduct a *de novo* review of every portion of the Magistrate Judge's report to which objections have been filed. Id. However, the court need not conduct a *de novo* review when a party makes only general and conclusory objections that do not direct the court to a specific error in the Magistrate Judge's proposed findings and recommendations. Orpiano v. Johnson, 687 F.2d 44, 47-48 (4th Cir. 1982).

## FACTS

Plaintiff brings this action alleging a myriad of constitutional rights violations by prison guards, supervisors, and other law enforcement personnel. Plaintiff's initial complaint and subsequent response to Defendants' Motion for Summary Judgment include a sizeable factual summary detailing numerous allegations of constitutional violations by over two dozen Defendants. Plaintiff specifically alleged assaults by various prison guards on October 8, 2001 (Compl., 9 ¶ 44),

2

December 6, 2001 (Compl., 15, ¶ 58),  July 8, 2002 (Compl., 20, ¶69),  and May 26, 2003 (Comp., 22, ¶ 73).  Plaintiff also alleges claims stemming from the use of a restraint chair on him by guards on January 17, 2002 (Compl., 26, ¶ 79),  improper solitary confinement (Compl., 24, ¶ 77), food service deficiencies (Comp., 25, ¶ 78),  seizure of property (Comp., 27, ¶ 81),  and the improper use of certain restraints on him during recreation (Compl., 32 ¶ 94).

The Magistrate Judge recommended summary judgment for all Defendants after finding that Plaintiff failed to exhaust his administrative remedies.  Magistrate Judge's Report and Recommendation, 8.  In objecting to the Magistrate Judge's conclusion, Plaintiff specified claims he believed should not be dismissed and provided additions to the record[1] to support his contention that the Magistrate Judge erred in finding that he had failed to exhaust.  See 28 U.S.C. § 636(b)(1)(C) (permitting the court to "receive further evidence" when engaging in *de novo* review of portions of the Magistrate Judge's report).  The court will address only those specific claims preserved for review by Plaintiff.  Rather than detail Plaintiff's mammoth factual narrative, the court will provide a more detailed factual outline in those instances where Plaintiff has objected to the Magistrate's Report.  The court further notes that a number of claims are subject to summary dismissal.

## LAW/DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered when a moving party has shown "[that] the pleadings, depositions, answers to

---

[1] The record indicates that Defendant received notification by electronic mailing on July 6, 2005 of Plaintiff's Objections to the Report and Recommendation of the Magistrate Judge and the additional evidence attached thereto as exhibits.

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). Summary judgment should be granted in those cases where it is perfectly clear that there remains no genuine dispute as to material fact and inquiry into the facts is unnecessary to clarify the application of the law. McKinney v. Bd. of Trustees of Mayland Community College, 955 F.2d 924, 928 (4th Cir. 1992). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

I. Claims Alleging *Respondeat Superior* Liability

Defendants Bessinger, Maynard, McCoy, McKie, Ozmint, and Ward (the "Supervisory Defendants") are supervisors of SCDC and the South Carolina Law Enforcement Division (SLED). Plaintiff has sued these Supervisory Defendants in their individual capacities for the events articulated in the underlying claims. However, Plaintiff does not allege that these supervisory personnel authorized, personally took part in, or promulgated any policies relating to the allegations in Plaintiff's complaint. Stated plainly, Plaintiff claims that the Supervisory Defendants are vicariously liable for the torts of their employees. Thus, Plaintiff's only theory of liability against these Supervisory Defendants can be that of *respondeat superior*.

The doctrine of *respondeat superior* has limited application under § 1983. Vinnedge v.

4

Gibbs , 550 F.2d 926, 928-29 (4th Cir. 1977) (citing Bennett v. Gravelle, 323 F. Supp. 203, 214 (D. Md.1971)).  The Fourth Circuit has limited vicarious liability for supervisors in § 1983 claims to those instances where a plaintiff can prove "that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury, that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,' and that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff."  Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994).

Under this established framework, Plaintiff's claim that the Supervisory Defendants are vicariously liable for the torts of their employees must fail.  Plaintiff alleges no facts beyond his assertion that they had knowledge of "harras[ment], taunt[s], and threats," Compl., 29, ¶¶ 29-30, and "didn't respond to over 20 complaints filed by plaintiff."  Id.  Plaintiff cannot point to any policy or practice, official or otherwise, giving rise to the unconstitutional acts he alleges.  At best, Plaintiff's claim can be construed as arguing that the Supervisory Defendants failed to properly conduct a grievance proceeding.  To the extent that these Supervisory Defendants were even made aware that Plaintiff sought to initiate such proceedings, there is no constitutional injury.  See Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state.") (additional citations omitted).  Plaintiff fails to state a claim against all Defendants sued individually in their supervisory capacity and summary judgment is GRANTED as to all claims against Defendants Bessinger, Maynard, McCoy, McKie, Ozmint, and Ward.

II.  Official Capacity Claims

Plaintiff's claims against all Defendants in their "official capacities" for damages also fail. Suits against government authorities serving in their official capacity simply represent "another way of pleading an action against an entity of which an officer is an agent." Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690, n. 55 (1978).   The Supreme Court has held that  the Eleventh Amendment bars a damages action against a State in federal court absent a waiver by the State or valid congressional override.  Kentucky v. Graham, 473 U.S. 159, 169 (1985).  This limitation "remains in effect when State officials are sued for damages in their official capacity." Id.; see also, Edelman v. Jordan, 415 U.S. 651, 663 (1974) ("An unconsenting State is immune from suits brought in federal courts by her own citizens.");  Gray v. Laws , 51 F.3d 426, 430 (4th Cir. 1995) ("[Like the state itself, state officers acting in their official capacity are also entitled to Eleventh Amendment protection, because 'a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office,' and '[a]s such, it is no different from a suit against the State itself.'") (quoting Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989)).

In the instant matter it is uncontested that all individuals sued for damages in their official capacities serve as directors or employees of state agencies. Plaintiff's attempt to sue them in this manner is actually an attempt to sue the State of South Carolina and is barred by the Eleventh Amendment.  Gray, 51 F.3d at 430.  Thus, summary dismissal is GRANTED to ALL named defendants sued in their official capacity for damages stemming from the alleged violations of Plaintiff's constitutional  rights.

6

III. <u>Claims Against Defendants Underwood and Stewart</u>

Plaintiff also brings § 1983 claims against South Carolina law enforcement officials Alex Underwood and Robin Stewart for allegedly failing to adequately pursue a criminal investigation of Plaintiff's claims of abuse by prison guards. During the events underlying the instant complaint, Defendants Underwood and Stewart were acting in their official, investigative roles as law enforcement personnel. It is uncontested that they were performing a discretionary function when they interviewed Plaintiff regarding his allegations of abuse and forwarded the information they secured to the Solicitor General. A government official performing a discretionary function does so clothed with qualified immunity shielding him from civil liability as long as his actions do not violate clearly established tenets of constitutional law. <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 814 (1982).

Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation. <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985). In a suit against an official for an alleged violation of a constitutional right, the requisites of a qualified immunity defense must be considered in proper sequence. <u>Saucier v. Katz</u>, 533 U.S. 194, 200 (2001). A court required to rule upon qualified immunity must consider the threshold question whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right. <u>Id.</u> at 201. If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. <u>Id.</u>

Plaintiff fails to point to a violation of a constitutional right by Defendants Underwood and Stewart. Plaintiff expresses only that he informed Underwood of his "wish to press criminal

7

charges." Pl. Objection to Magistrate's Report, 3, ¶16. Underwood engaged in an investigation and submitted a report to the Solicitor's Office. Aff. of Underwood, 2 (found at entry 108). The Solicitor's Office alone made the decision not to prosecute any Defendants for alleged criminal conduct and thus no claim can be made that Defendants Underwood or Stewart deprived Plaintiff of a constitutional right. Because Plaintiff has not satisfied the first prong of the Saucier test, Defendants Underwood and Stewart are entitled to qualified immunity. The claims against them are DISMISSED with prejudice. Defendants' summary judgment motion is granted with respect to this issue.

IV. Exhaustion of Administrative Remedies/ Remaining Cognizable Claims

The Prison Litigation Reform Act of 1995 (PLRA) requires prisoner plaintiffs to exhaust all available administrative remedies prior to bringing an action in Federal Court. 42 U.S.C. § 1997e(a). The PLRA has been interpreted to require mandatory exhaustion of all administrative remedies regardless of the relief offered through those administrative procedures. Booth v. Churner, 532 U.S. 731, 741 (2001). The PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Thus, Plaintiff must have exhausted all available administrative remedies for every claim alleged in this action in order for the court to reach the merits of those claims.

Under the SCDC grievance procedures, an inmate is entitled to file an internal grievance for all complaints "regarding department policies/procedures, directives, or conditions which directly affect an inmate, actions of a staff member toward an inmate, actions of an inmate against another

8

inmate," and all inmate property complaints. SCDC Inmate Grievance System (hereinafter "Grievance Procedures") §§ 7.1-7.4. Inmates may also file grievances appealing certain findings of internal prison disciplinary hearings, classifications determining custody levels, and calculation of sentence related credits. Id. §§7.5-7.7. The Grievance Procedures also outline certain issues that are specifically "non-grievable," id. §§ 8-8.44, but recognize a procedure for filing grievances when "a question may arise as to whether an item is grievable." Id. § 9.

An inmate must follow a multiple-step process outlined in the Grievance Procedures. First, inmates "must make an effort to informally resolve a grievance by either submitting a Request to Staff Member Form or by discussing their complaint with the appropriate supervisor." Grievance Procedures, § 13.1. If a matter cannot be resolved informally, an inmate must file a "Form 10-5, Step 1" within 15 days of the alleged incident. Id. The policy notes, however, that if "the matter involves allegations of criminal activity," no informal resolution is possible. Id. Important to the instant matter, inmates alleging the occurrence of "sexual activity/conduct . . . between an inmate and a staff member" must process their complaints as alleged criminal activity under Grievance Procedure § 15. Id. Assuming the grievance was properly filed, the Warden is to respond to the grieving inmate in writing in the space provided at the bottom of the Step 1 Grievance Form. Id. § 13.3.

If an inmate is not satisfied with the decision of the Warden, the inmate may appeal to the "Division Director of Operations" or the "appropriate Office Director or Division Director," depending on the nature of the grievance. Grievance Procedures, § 13.4. This appeal is accomplished when an inmate completes an "SCDC Form 10-5a, Step 2 " and submits it, along with copies of the Step 1 form outlining the issue being appealed, to the Institutional Inmate Grievance

Coordinator. Id. A response to this Step 2 form represents "the Department's final response in the

matter." Id. § 13.5.[2]

Though the Grievance Procedures do have time limitations, exceptions to all time limitations

––––––––––––––––––––

[2]    The current SCDC Grievance Procedures state that an inmate may appeal a Step 2 determination to the South Carolina Administrative Law Judge Division if the underlying grievance issue implicates one of five specifically articulated areas. Grievance Procedures, § 13.6. These areas include "allegations of deprivations that would rise to the level of constitutional violations." Id. § 13.6.5. However, at the time of the events underlying Plaintiff's complaint, the court notes considerable confusion in the area of final exhaustion as it relates to prisoner litigation.

In Al-Shabazz v. South Carolina, the South Carolina Supreme Court held that an inmate may seek review by an Administrative Law Judge (ALJ) of a final decision on a "non-collateral or administrative matter" by SCDC. 527 S.E.2d 742, 758 (S.C. 1999). Though the Al-Shabazz court specifically noted three areas appropriate for ALJ review, the decision was interpreted to mean all administrative matters involving prisoners could be appealed to an ALJ, thus arguably adding an additional "step" to the exhaustion requirements for prisoner litigants. However, in 2001 the Administrative Law Division announced a decision specifically limiting its jurisdiction over inmate appeals to the three areas detailed by name in Al-Shabazz: 1) the calculation of sentence-related credits; 2) custody status; and 3) the outcome of a major disciplinary hearing. McNeil v. S.C. Dep't of Corrections, 02-ALJ-04-00336-AP (filed Sept. 5, 2001).

McNeil stood as the benchmark for Administrative Law Judge Review until 2004 when the South Carolina Supreme Court reiterated that its own jurisprudence, not a decision of the Administrative Law Judge Division itself, governed whether an ALJ could review the denial of a Step 2 or other internal prison grievance. See Sullivan v. S.C. Dep't of Corrections, 586 S.E.2d 124, 128 n.5 (S.C. 2003).

Most recently, in Slezak v. S.C. Dep't of Corrections, the Supreme Court of South Carolina again clarified that "the ALJD has subject matter jurisdiction to hear appeals from the final decision of the DOC in a non-collateral or administrative matter." 605 S.E.2d 506, 507 (S.C. 2004). However, the supreme court additionally noted that "the ALJ Division is not required to hold a hearing in every matter . . . [and] [s]ummary dismissal may be appropriate where the inmate's grievance does not implicate a state-created liberty or property interest." Id. Thus, the South Carolina Supreme Court appears to endorse a case-by-case approach for the determination of "state created liberty interests" that permits an ALJ to dismiss appeals from prison administrative procedures by merely holding that the prisoner complaint falls outside of this jurisdictional window.

Regardless of the present state of administrative law judge review, Plaintiff's complaints arose during the McNeil era when the ALJ declined to exercise jurisdiction over an appeal unless it concerned sentence-related credits, custody status, or a disciplinary hearing. Plaintiff largely fails to allege any of these three grievances and therefore could not have received ALJ review of a properly filed, but denied, Step 2 grievance. Thus, unless otherwise noted, the court will analyze Plaintiff's exhaustion of administrative remedies under the "two-step" approach and presume a grievance exhausted under the PLRA when a properly filed Step 2 grievance is denied.

may be allowed "provided that documented reasonable cause can be demonstrated as to why the initial time frame was not met." Id. § 13.9.

An "Emergency Grievance" may be filed for all grievances encompassing "situations, actions or conditions in which any person's health, safety or welfare is threatened or in serious danger." Grievance Procedures, § 14.1. If a grievance is determined to be an emergency by the appropriate authority, it is to be immediately forwarded to the Warden or to the appropriate authority within SCDC. Id. § 14.3. If it is not found to be an emergency grievance, it should be "routinely processed through the system as if it were a normal grievance." Id. § 14.4.

Finally, all allegations of criminal wrongdoing by an inmate are to be immediately forwarded, upon filing by the inmate, to the Chief of the Inmate Grievance Unit. The Chief will consult with the Division of Investigations to determine if a criminal investigation is appropriate. Grievance Procedure, § 15. If a criminal investigation is not required, the grievance will be processed in the traditional manner. Id.

The Magistrate Judge found that Plaintiff failed to comply with the PLRA's exhaustion requirement with respect to all of his claims. Report and Recommendation of Magistrate Judge, 8. In his objection to the Magistrate Judge's Report, Plaintiff states that he "[can] now show that he did exhaust all requirements and will do such with evidence that has not been introduced before now." Plaintiff's Motion to Object to Report and Recommendation of Magistrate Judge, 1 ¶ 3 (errors in original).

The court reviews, *seriatim,* the allegations Plaintiff contends have been administratively exhausted and, when applicable, addresses the appropriateness of summary judgment.

11

A. <u>October 8, 2001 Incidents</u>

Plaintiff asserts that his Eight Amendment Right to be free of cruel and unusual punishment was violated when Corrections Officials forcibly removed him from his cell and repeatedly assaulted him on October 8, 2001. Plaintiff states that Defendants T. Murray, Duckett, Latta, Binbow, Robinson, and Adams (the "Defendant Officers") "came to [his] housing unit and began taunting and spraying excessive amounts of chemical tear gas and pepper spray." Complaint, 10 ¶ 45. Plaintiff further alleges that Defendant Officers "entered his room (six of them) wearing full riot [gear] . . . [and] began to punch, kick, club, and strike [him] . . . and put mechanical restraints on [him]." Id. at ¶ 46. Plaintiff claims that Defendant Officers continued to assault him after he was restrained in hand-cuffs. Id. Plaintiff also alleges that he was "dragged" to the maximum security medical station where Defendants Glover and Adams continued to assault him. Id. at 11, ¶ 47-48. He also avers that Defendants Reeves and Robinson taunted him and rubbed a dirty mop on his wounds. Id. at 13, ¶ 52.[3] Finally, Plaintiff alleges that he was sexually assaulted by Defendants Duckett and Murray while being held at the medical station. Id. at 11-12, ¶¶ 49-51.

The events of October 8, 2001 (including Plaintiff's administrative exhaustion of claims stemming therefrom) are best analyzed in three parts: 1) the claims arising out of the extraction of Plaintiff from his cell; 2) the claims arising out of the transportation of Plaintiff to the prison medical center (including the "mop incident"); and 3) the alleged sexual assault by Officers Duckett and Murray.

_____

[3] After a thorough reading of the record, it is unclear when Defendant Reeves arrived. It is also unclear when, exactly, the "mop incident" occurred.

1.  Extraction from Cell

Plaintiff contends that he exhausted all administrative remedies with regard to the alleged assault occurring during the forced extraction from his cell of October 8, 2001.  To substantiate his claim, Plaintiff argues that he filed an administrative grievance "directly to the head prison grievance coordinator" on September 5, 2001 and attaches a form indicating that the grievance was received and processed on September 10, 2001.[4]  Plaintiff's Motion to Object to Report and Recommendation of Magistrate Judge, Ex B-1 (found at entry 119-1, p. 12). Plaintiff then states that "this grievance was not filed and was returned." Id., 1 ¶ 7.  Plaintiff claims that he "resent the [grievance] directly to the chief of the grievance branch who referred it to Defendant Noles." Id.  Plaintiff contends that Defendant Noles "refused to process" his grievance and that it was returned to him.  Id.  Finally, Plaintiff argues that he "again wrote to the branch chief . . . on October 29, 2001, . . . but it was not processed." Id. at 2, ¶ 8.

Plaintiff's exhaustion is evidenced through a complex series of correspondence between Plaintiff,  Defendant Baxley (Branch Chief of Inmate Grievances), and  Defendant Noles (an MSU official charged with handling inmate grievances). The record as supplemented by Plaintiff indicates that he filled out two Step 1 forms detailing some of  the alleged incidents of October 8, 2001. Plaintiff's Motion to Object to Report and Recommendation of Magistrate Judge, Ex. B2 (found at entry 119-1, p. 13).  One Step 1 form produced by Plaintiff discussed only the events alleged to have taken place in Plaintiff's cell and, specifically, accused Defendants Glover, Binbow, Thompson, Robinson, Reeves, and Adams of using excessive force during the cell extraction.  Id. at Ex. B-2-B-4

---

[4]  The court notes that the September 5, 2001 grievance pre-dates the alleged incident by over one month and thus provides no evidence of the exhaustion of administrative remedies concerning the events of October 8, 2001.

(found at entry 119-1, pp. 13-16). The second Step 1 form accused Defendant Murray of sexually assaulting Plaintiff after Plaintiff was moved to the "medical office." Id. at B-5-B-6 (found at entry 119-1, pp. 17-18). Though neither form appears on its face to have been processed by prison authorities, the record shows that Plaintiff did send a "Request to Staff Member" asking that an emergency grievance be filed on his behalf on October 19, 2001. Id. at Ex. C-1 (found at entry 119-1, p. 19). The court finds that Plaintiff attached a copy of both Step 1 Grievance forms detailing the events of October 8, 2001 to his October 19, 2001 "Request to Staff Member" and alleged an "Emergency Grievance" in accordance with SCDC policy.

Proof of Plaintiff's attachment of the grievance to the staff member request, and consequently proof of his attempt to fully exhaust administrative remedies, is found in Defendant Noles' response to this "emergency" request. Noles' response informed Plaintiff that "he failed to follow the proper procedure by filing *the attached* grievance via the IGC within 15 days." Plaintiff's Motion to Object to Report and Recommendation of Magistrate Judge, Ex. C-1 (found at entry 119-1, p. 19) (emphasis added). Defendant Noles told Plaintiff, "[i]f you had followed policy your concerns would have been addressed as a routine grievance, not an emergency as requested." Id. Most notably, Defendant Noles completed his response by stating that, although he was returning Plaintiff's grievance unprocessed, "this matter is being addressed at the request of Mr. Robert E. Ward [and] that [he] trust[s] these issues will receive due consideration." Id. Plaintiff includes as an attachment to his objections a letter from Institutional Director Robert Ward apparently addressing Plaintiff's complaint and concluding that all staff involved in the use of force against Plaintiff [5] "adhered to all

---

[5] The letter from Ward referenced the date force was used against Plaintiff as October 11, 2001. Pl. Motion to Object, H-O. The court will construe Ward's reference as an error and treats the letter as responding to the complaints regarding October 8, 2001.

Agency policies and procedures" and used "the minimum amount of force" required "to bring a dangerous situation under control." Id. at H-0 (found at Entry 114-1, p. 39).

Plaintiff adds to the record an additional request sent to Defendant Baxley on October 29, 2001, expressing displeasure with Defendant Noles' earlier handling of his request for an emergency grievance. Plaintiff's Motion to Object to Report and Recommendation of Magistrate Judge, Ex. D-1 (found at Entry 114-1, p. 20). Contrary to Defendant Noles' response that Plaintiff failed to file a grievance within the prescribed time limits, Plaintiff informed Ms. Baxley that he filed his grievance within fifteen days of the incidents alleged therein and reiterated that his allegations detailed criminal wrongdoing.[6] In his October 29, 2001 correspondence sent to Baxley, Plaintiff acknowledges his desire to "exh[aust] [his] in house remedy and allow him to proceed in his civil suit." Id. This request was not processed by Defendant Baxley and was instead handled by Defendant Noles. Noles again informed Plaintiff that "[Plaintiff] chose not to follow the correct procedure in filing an inmate grievance . . . [and] [i]nstead [] forwarded [his] grievance to the central office." Id.

The court finds that Plaintiff attempted to have his grievance outlining the events occurring during the October 8, 2001 extraction and the subsequent sexual assault treated as an emergency in accordance with SCDC policy. Though Defendant Noles had authority to decide Plaintiff's grievance would not be processed as an emergency, it does not appear that Noles followed SCDC procedures when he twice returned Plaintiff's grievance instead of "routinely process[ing] it through

---

[6] If an inmate alleges criminal wrongdoing by a guard or other employee and it is deemed appropriate to do so by the Chief of the Inmate Grievance Branch, "an investigation is initiated by the Division of Investigations in accordance with applicable SCDC policies/procedures." Grievance Procedures, § 15. If an investigation is not required, the grievance will be processed in accordance with the traditional grievance proceedings. Id.

15

the system as if it were a normal grievance." Grievance Procedures, § 14.4. SCDC's failure to properly handle Plaintiff's grievance in accordance with established procedures renders the exhaustion requirement satisfied for those claims clearly articulated in Plaintiff's grievance forms. See Johnson v. Garraghty, 57 F. Supp. 2d 321, 329 (E.D. Va. 1999) (noting that actions taken by corrections officials that prevent a plaintiff from utilizing the administrative grievance may excuse the need for exhaustion). Accordingly, because the court finds that Plaintiff's grievance forms reflect a challenge to the constitutionality of Defendants' actions during the October 8, 2001 cell extraction as well as the alleged sexual assault that followed, administrative exhaustion is satisfied as to these two claims.

The satisfaction of exhaustion requirements notwithstanding, the court finds that Defendants Glover, Binbow, Thompson, Robinson, Reeves, and Adams are entitled to qualified immunity for any claims arising out of the extraction of Plaintiff from his cell on October 8, 2001. As noted, government officials performing discretionary functions are entitled to qualified immunity from civil liability as long as their actions do not violate clearly established tenets of constitutional law. Harlow, 457 U.S. at 814.

In order to prove a violation of the Eighth Amendment's ban on the infliction of cruel and unusual punishment through the application of excessive force, Plaintiff must establish both "subjective" and "objective" components. Hudson v. McMillian, 503 U.S. 1, 7 (1992). To satisfy the "objective" component, Plaintiff must prove that he received a sufficiently serious injury as a result of the force used by Defendants. Norman v. Taylor, 25 F.3d 1259, 1263 (4th Cir. 1995). Though the injury need not be significant, the Fourth Circuit has held that "absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eight Amendment excessive force claim

16

if his injury is *de minimis*." Id.

The record indicates only minor injuries sustained during the October 8, 2001 extraction. The hospital report notes that Plaintiff suffered only from cuts and swelling to the face. Aff. of Rosemary Murphy, 13 (found at entry 112). Though there was bleeding from this injury, there was no "evidence of facial bone, orbital, or mandibular fracture" and the result of the incident appears only to be "soft tissue swelling." Id. This type of injury fails to rise beyond the level of *de minimis* and similarly fails to support a claim of excessive force actionable under the Eighth Amendment. See, e.g., Taylor v. McDuffie, 155 F.3d 479, 484 (4th Cir. 1998) (noting slight swelling, abrasions, and tenderness as *de minimis*); Stanley v. Hejirika, 134 F. 3d 629, 637-38 (4th Cir. 1998) (holding bruising, swelling, and a loosened tooth to represent evidence of *de minimis* force).

Even if Plaintiff could meet the objective component for his excessive force claim, he clearly fails to meet the subjective component. The subjective portion of an excessive force claim requires Plaintiff to demonstrate that Defendant Officers inflicted force sadistically and maliciously for the sole purpose of causing harm when they extracted him from his cell on October 8, 2001. Whitley v. Albers, 475 U.S. 312, 320-21 (1986). The following factors should be balanced in determining whether prison officials acted maliciously and sadistically: (1) the need for application of force; (2) the relationship between that need and the amount of force used; (3) the threat reasonably perceived by the responsible officials; and (4) any efforts made to temper the severity of a forceful response. Williams v. Benjamin, 77 F.3d 756, 762 (4th Cir. 1996) (citing Whitley, 475 U.S. at 321; Hudson, 503 U.S. at 7). It must be noted that the absence of serious injury is a relevant, but not entirely dispositive, factor to be considered in this subjective analysis. Id.

With respect to the first factor, Plaintiff had broken out the window of his cell and was

17

demanding to speak with the prison warden when Defendant Officers responded. Complaint, 9. Plaintiff covered the broken cell window with sheets and blankets and refused orders to come to the cell door for removal. Aff. of Duckett, 2 (found at entry 110); Aff. of Latta, 3 (found at entry 106). Applying the second factor, Plaintiff does not dispute that he attempted to stab Defendant Officers with a homemade knife and succeeded in striking Officer Glover with a "piece of metal." Defendant's Memo in Support of Summary Judgment, 14. With respect to the third factor, Plaintiff was housed in the Maximum Security Unit (MSU) at Kirkland Correctional Institution. Aff. of McKie, 2 (found at entry 96). Corrections Officers must take unique safety precautions when dealing with inmates in MSU as MSU "is a specialized housing unit" that "typically houses some of the worst inmates in SCDC." Id. Plaintiff was placed in MSU after allegedly assaulting a fellow inmate while housed at another facility. Id. Thus, Plaintiff was an inmate with a known propensity for violence and Defendant Officers reasonably perceived him to be a threat to their safety when they entered his cell on October 8, 2001. As to the fourth Whitley factor, Defendant Officers also attempted to mitigate the challenged use of force by seeking to restore control through other methods prior to entering Plaintiff's cell. Defendant Officers used tear gas prior to entering Plaintiff's cell to little effect as Plaintiff acknowledges his intention to "fight for his life" in response to the use of gas and the alleged accompanying "threats of violence" by Defendant Officers. Complaint, 10.

The court finds that the use of force by Defendant Officers to extract Plaintiff from his cell was not malicious or sadistic and Plaintiff cannot sustain his Eighth Amendment claim of excessive force against Defendant Officers. Defendant Officers are entitled to qualified immunity because they did not violate a constitutional right. Katz, 533 U.S. at 201. Summary judgment is GRANTED to Defendants Glover, Binbow, Thompson, Robinson, Reeves, and Adams for all claims stemming

18

from the removal of Plaintiff from his cell on October 8, 2001.

2.  Events Following Cell Extraction

Plaintiff states in his complaint that after his extraction, certain Defendant Officers assaulted him while transporting him to the prison medical unit, attempted to prevent him from breathing, "slammed his head into the floor of the medical office," and "took a filthy mop . . . and placed it on [Plaintiff's] bleeding wounds. . . ."  Complaint, 11-13.  The record does not indicate that Plaintiff ever raised these complaints to the proper authorities in a Step 1 grievance form.  Plaintiff's claims pertaining to the transportation from his cell and subsequent events not including the alleged sexual assault are DISMISSED without prejudice to allow Plaintiff to pursue his administrative remedies.

3.  Alleged Sexual Assault

Plaintiff contends that he was brought to the "medical station" where he was repeatedly assaulted by Defendants Duckett and Murray.  Specifically, Plaintiff states that Duckett "grabbed the connecting chain between the leg irons . . . , placed his booted foot on the Plaintiff's testicles, . . . and pulled the leg irons above [Plaintiff's] head."  Complaint, 11.  Plaintiff continues by articulating a sexual assault by Defendant Murray:

> Defendant T. Murray at this time took a pair of scissors and began to poke and cut away Plaintiffs clothing, intentionaly lacerating the arms and legs in a number of places, intentionally, and leaving him nude.  Defendant Murray then reached down between the Plaintiffs legs and began to caress and fondle the penis and testicles, saying how much he enjoyed a large penis.  Defendant Murray twisted and pulled on the genitals of Plaintiff causing a great deal of pain, Murray then took his right hand and placed his fingers between the plaintiffs buttocks, and again forcefully penetrated his anus repeatedly with the stick as

19

> he stood on the plaintiffs back with his 300 plus pound body on the pavement to prevent him from moving, for over (2) minutes.

Complaint, 12 (errors in original).  Plaintiff states that he was accompanied to the hospital by Defendants Murray and Robinson who "threatened to murder the plaintiff if he so much as spoke a word to anyone at the hospital about a physical and sexual assault." Id. at 14.  In their motion for summary judgment, Defendants Murray and Robinson fail to address these allegations stating only in a footnote that "[t]here is absolutely no medical evidence to support Plaintiff's claim to have been sexually assaulted during the October 8, 2001 incident." Defendant's Memo in Support of Summary Judgment, 15 n.5.

The court finds, for the reasons articulated hereinabove, that Plaintiff has exhausted administrative remedies with regard to the alleged sexual assault.  Further, though no evidence of physical injury exists on the record, these allegations concern behavior of the "sort repugnant to the conscience of mankind" that cannot be excused even absent a showing of physical injury.  Norman v. Taylor, 25 F.3d 1259, 1263 (4th Cir. 1994).  The Supreme Court has held, "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [regardless of whether] . . . significant injury is evident." Hudson, 503 U.S. at 9.  Taking the facts in the light most favorable to Plaintiff as the court is required to do for summary judgment purposes, Plaintiff's allegations articulate a scenario that a reasonable fact-finder could find violates the Eighth Amendment's ban on cruel and unusual punishment.  Consequently, a genuine issue for trial exists making summary judgment inappropriate at this time.  Summary judgment is **denied** for the claim alleging sexual assault on October 8, 2001.

B.  December 6, 2001 Incident

Plaintiff alleges that "on or about the date of December 6, 2001," he was assaulted by prison guards.  Complaint, 15 ¶ 58.  Plaintiff claims that the incident began when  he was "accused of throwing a liquid substance on Defendants Binbow and Adams."  Id.  Plaintiff states that Defendants then sprayed tear gas into his housing unit and taunted him.  Id.  Plaintiff, "fearing for his life, . . . jammed [his] room door from the inside to avoid a use of force incident."  Id.  Ultimately, Defendant was forcibly extracted from his cell by Defendants Reeves, Robinson, Peterson, Parker, Pallard, Binbow, and Boulware.  Id.  at ¶ 59.

Plaintiff further claims excessive force was used not only during this extraction, but also while he "was dragged to the medical station."  Id. at 16 ¶ 60.  Plaintiff alleges that while he was restrained, Defendant Adams assaulted him by "punch[ing], kick[ing], and strik[ing] [his] head, face, and body for over two minutes."  Id. at ¶ 61.  Plaintiff claims that Defendant Adams "delivered a kick with such force that [Plaintiff's] right thumb broke with . . . [an] auditory snap . . . ."  Id. at 17 ¶ 62.  Plaintiff concludes by noting that Defendant Adams had to be "physically removed" from Plaintiff's person by Defendant Latta because Adams "continued to strike [Plaintiff]."  Id.  Defendants respond to the December 6, 2001 allegations by arguing,  "with the exception of the blows by Officer Adams while the Plaintiff was restrained in the medical examination room, [the use of force was] fully justified and constitutional."  Defendants' Motion for Summary Judgment, 19.

Plaintiff objects to the Magistrate Judge's finding that he failed to exhaust his administrative remedies regarding the alleged assault incident on December 6, 2001.  Plaintiff's Motion to Object to Report and Recommendation of Magistrate Judge, 3.   SCDC policy allows inmate grievances

alleging criminal misconduct to be initially investigated by internal affairs.  Grievance Procedure, § 15.  An investigation by the Internal Affairs Unit does not terminate the administrative grievance proceedings.   If a criminal investigation is not required, the grievance should be processed in the traditional manner.  Id.  Plaintiff claims that he filed a Step 1 form and received a response from authorities indicating that his allegations "are being currently investigated."  Id.  He includes a copy of Step 1 form reflecting his assertion.  Id. at 3 (Step 1 form attached as Ex. E-2 at Entry 114-1, p. 23).  Plaintiff also states that he wrote to SCDC Director Maynard and received correspondence from SCDC Ombudsman Division representative Odessa Martin regarding the December 6, 2001 assault. Id. at Ex. H-2 (found at Entry 114-2, p. 1).   The record before the court suggests that SCDC procedures were not followed when Plaintiff's grievance was not "routinely processed . . . through the system as if it were a normal grievance" after no activity was taken by the Internal Affairs Unit. Grievance Procedures, § 14.4.   The failure of SCDC to properly handle Plaintiff's grievance regarding the alleged assault by Officer Adams on December 6, 2001 precludes Defendants from arguing that Plaintiff failed to exhaust his administrative remedies with regard to this claim. Garraghty, 57 F. Supp. 2d. at 329.

Accordingly, the court turns to the merits of Plaintiff's allegations. The record before the court presents conflicting allegations and factual scenarios.  An affidavit by treating nurse Clifford Counts indicates that medical records exist describing Plaintiff's injuries.   Aff. of Counts, 3 (found at entry 107). Despite this affidavit, Defendants argue that Plaintiff failed to complain of any injuries immediately following the alleged December 6, 2001 incident.  Defendants' Motion for Summary Judgement, 20.   However, Defendants also appear to acknowledge that Adams struck Plaintiff and that this use of force was not justified.  See Id., 19.  Because there is a material dispute as to the

underlying facts, summary judgment is **denied** as to the claim of excessive force by Defendant Officers Reeves, Robinson, Peterson, Parker, Pallard, Binbow, Boulware, Latta, and Adams on December 6, 2001.

C. July 8, 2002 Incident

Plaintiff claims that on July 8, 2002, Defendant Officer Robert Esposito threatened him and discharged large quantities of chemical munitions into Plaintiff's cell. Complaint, 20 ¶¶ 69-70. Plaintiff argues in his objections to Magistrate Judge's Report and Recommendation that he exhausted all administrative remedies surrounding the alleged assault of July 8, 2002. Plaintiff's Motion to Object to Report and Recommendation of Magistrate Judge, 5 ¶¶ 22-25. The record reflects that Plaintiff filed a Step 1 grievance that was received by prison authorities on August 12, 2002 and captioned it KCI-0101-02. Id. at Ex. I-8 (found at Entry 119-2, p. 22). Plaintiff appealed this decision in a Step 2 grievance on October 15, 2002. Id. Though his Step 2 appeal was denied, Plaintiff was notified of a right to appeal this decision to the South Carolina Administrative Law Division. Id. Plaintiff did not appeal this denial.

Plaintiff's failure to appeal this decision has no affect on the instant motion. A close examination of the record indicates that Plaintiff's Step 1 and Step 2 grievances dispute a finding of culpability in a separate disciplinary proceeding and do not directly address the incident Plaintiff alleges in the mater *sub judice*. In his grievance forms Plaintiff protests the outcome of an internal adjudicative proceeding stemming from the July 8, 2002 incident. Plaintiff did not seek to address the conduct of Defendant Esposito described in his complaint. Plaintiff has failed to exhaust administrative remedies with regard to the July 8, 2002 alleged assault. Plaintiff's claim is

DISMISSED without prejudice.

D.  May 26, 2003 Incident

Plaintiff claims that he was sprayed in his cell with chemical munitions by Defendant Joel Moore on May 26, 2003. Complaint, 22 ¶ 73.  Plaintiff objects to the Magistrate Judge's findings that he failed to exhaust administrative remedies with regard to this incident.  Plaintiff's Motion to Object to Report and Recommendation of Magistrate Judge, 5-6 ¶¶ 26-28.  Plaintiff attaches copies of a Step 1 grievance form numbered "MSU-055-03" and a Step 2 report appealing the decision on his grievance to substantiate his claim of administrative exhaustion.  Id. at Ex. J-1 (found at entry 199-3, pp. 2-3).  Assuming for purposes of summary judgment that Plaintiff exhausted his administrative remedies, Plaintiff's claim fails to rise to the level of a constitutional violation actionable under § 1983.

To establish a claim under the Eighth Amendment, Plaintiff must establish both "subjective" and "objective" components.  Hudson, 503 U.S. at 7.  As noted, satisfaction of the "objective" component requires Plaintiff to prove that he received a sufficiently serious injury as a result of the force used by Defendants.  Norman, 25 F.3d at 1263.  Second, he must present evidence that Defendant Moore had a  " 'sufficiently culpable state of mind.' " Farmer, 511 U.S. at 834 (quoting Wilson, 501 U.S. at 297).

The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort " 'repugnant to the conscience of mankind.'" Hudson v. McMillan, 503 U.S. 1, 9-10 (1992) (additional citations omitted). "If a prisoner has not suffered serious or significant

physical or mental injury as a result of the challenged condition, he simply has not been subjected to cruel and unusual punishment within the meaning of the [Eighth] Amendment."  Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir.1993).  Plaintiff fails to allege a serious deprivation or even articulate any injury beyond *de minimis* discomfort stemming from the May 26, 2003 incident. Further, Plaintiff does not allege that Officer Moore engaged in conduct so repugnant as to implicate the Eighth Amendment.

Even assuming Plaintiff could substantiate more than *de minimis* injury, he fails to sustain a claim that Defendant Moore acted with a sufficiently culpable state of mind.  "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause. . . ."  Whitley v. Albers, 475 U.S. 312, 319 (1986). Plaintiff admits that he was sprayed with tear gas when he "failed to return contraband" to Officer Moore.  Plaintiff's Motion to Object to Report and Recommendation of Magistrate Judge, 5 ¶ 27. Plaintiff later admits that "he turned over such contraband to the warden of Kirkland Prison after the assault."  Id. (emphasis added).  Officer Moore's decision to use tear gas to secure contraband that Plaintiff refused to willingly release does not rise to the level of "wantonness" actionable under the Eighth Amendment.   Accordingly, Defendant's motion for summary judgment is **GRANTED** as to this issue.


E.  July 21, 2001-March 4, 2002 Confinement

Plaintiff alleges in his complaint that he was subjected to an unjustified and prolonged solitary confinement where he was "denied clothing, access to the courts, and basic necessities needed to keep up his health and hygiene."  Complaint, 24 ¶ 77.  Plaintiff objects to the Magistrate

Judge's findings that he failed to exhaust administrative remedies with regard to his prolonged solitary confinement and reasserts that he was subjected to "cruel and unusual punishment." Plaintiff's Motion to Object to Report and Recommendation of Magistrate Judge, 4 ¶ 17. Plaintiff attaches copies of a Step 1 grievance form numbered "MSU-0310-0," id. at G-6 (found at entry 119-1, p. 37), and a Step 2 report appealing the denial of this grievance to substantiate his claim of administrative exhaustion. Id. at G-7 (found at entry 119-1, p. 38).

Despite these additions to the record, a close inspection reveals Plaintiff has failed to exhaust administrative remedies. When queried in his Step 1 grievance as to what action he was seeking from prison authorities, Plaintiff demanded only a return of property. Plaintiff's Motion to Object to Report and Recommendation of Magistrate Judge, G-6 (found at entry 119-1, p. 37). Thus, prison authorities responded solely to Plaintiff's complaint regarding a loss of property when they ruled on his grievance. Id. ("[D]ue to your threatening and destructive behavior you aren't allowed to have anything in your cell. . . ."). In his Step 2 appeal, Plaintiff vaguely references the property confiscation before adding claims not alleged in his initial Step 1 complaint. Id. at G-7 (found at entry 119-1, p. 38). It is these "new" claims Plaintiff now addresses in his objection to the Magistrate Judge's Report and Recommendation. Thus, Plaintiff failed to properly file an administrative grievance alleging "cruel and unusual punishment" based on his solitary confinement. His administrative avenues are not exhausted and all complaints stemming from the July 21, 2001-March 18, 2002 confinement are DISMISSED without prejudice.

F. December 6, 2001-January 28, 2002 Food Incidents

Plaintiff contends that from December 6, 2001 to January 28, 2002 he was "denied food and

fed a bad lunch consisting of cold lunch meats, bread, and canned fruit (3) times a day." Complaint, 25 ¶ 78. Plaintiff argues in his objections that he exhausted all administrative remedies regarding disruption of his food service. Plaintiff's Motion to Object to Report and Recommendation of Magistrate Judge, 4 ¶ 18. Plaintiff attaches copies of a Step 1 grievance form numbered "MSU-0001-02," id. at G-4 (found at entry 119-1, p. 35), and a Step 2 report appealing the decision on his grievance to substantiate his claim of administrative exhaustion. Id. at G-5 (found at entry 119-1, p. 36). In his Step 1 grievance, Plaintiff alleges that "food is being used a disciplinary measure" and demands an explanation as to why he is receiving "finger foods-a bag lunch, in place of a regular tray." Id. at G-4 (found at entry 119-1, p. 35).

Even if Plaintiff had exhausted all administrative remedies, he fails to state a claim alleging "sufficiently serious" deprivation cognizable under § 1983. Farmer, 511 U.S. at 833. "A two-pronged showing is necessary to demonstrate a prima facie Eighth Amendment violation with respect to prison conditions: (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Williams v. Griffin, 952 F.2d 820, 824 (4th Cir. 1991) (internal citations omitted). With regard to Eight Amendment claims implicating improper food service, "[i]t us well established that inmates must be provided nutritionally adequate food, 'prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it.'" Shrader v. White, 761 F.2d 975, 986 (4th Cir. 1985) (citing Ramos v. Lamm, 639 F.2d 559, 571 (10th Cir. 1980); Bolding v. Holshouser, 575 F.2d 461 (4th Cir. 1978)). In his complaint, Plaintiff alleges only dissatisfaction with the form of his meals (i.e. bag lunches versus trays). He does not challenge the conditions under which the food was made nor does he allege any nutritional deprivation stemming from the meal plan changes.

Plaintiff's dissatisfaction with the form of his meals fails as a matter of law to rise to the level of a constitutional claim as it does not constitute a "serious deprivation of a basic human need." Williams, 952 F. 2d at 824. Summary judgment is GRANTED as to all claims arising from food service disruptions.

G.  "Breach of Security" Claim

Plaintiff argues that he is entitled to recovery for injury based on "prison guards [leaving] a pair of leg cuff[s] in his room that "[Plaintiff] could have done a number things with." Plaintiff's Motion to Object to Report and Recommendation of Magistrate Judge, J-2 (found at entry 119-3, p. 4) .  Plaintiff includes a Step 1 grievance form detailing the incident as proof that he exhausted his administrative remedies.  Id.  Plaintiff also includes a letter from Institutional Director Robert Ward commending Plaintiff for returning leg irons improperly left in his cell "without incident" and "encouraging [him] to engage in such positive behavior in the future."  Id. at J-3 (found at entry 119-3, p. 5)  To the extent that his claim even articulates a "grievable event," it is unclear from the record whether it was formally  processed and thus it is questionable whether Plaintiff has exhausted his administrative remedies with regard to this claim.

Even if Plaintiff had exhausted administrative remedies, his claim fails to rise to the level of a constitutional violation.  At best, Plaintiff's claim can be construed as an internal violation of SCDC policy.  Such an allegation, without more, cannot be the basis for a constitutional claim. Absent the implication of a constitutionally protected interest, "[section 1983] does not provide any relief against prison rules violations assuming, *arguendo*, that such a violation occurred."  Keeler v. Pea, 782 F. Supp. 42, 44 (D.S.C. 1992).  Plaintiff's allegation fails to even suggest a violation of

28

a constitutional interest and is DISMISSED with prejudice.

H.  June 28, 2003, June 30, 2003, and August 25, 2003 Incidents

Plaintiff alleges that certain Defendant Officers engaged in sporadic episodes of name-calling and threats.   Plaintiff's Motion to Object to Report and Recommendation of Magistrate Judge, 6.  "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." Hudson,  503 U.S. at 9 (quoting Wilson, 501 U.S. at 298).  Plaintiff's allegations of name-calling and isolated taunts fail to rise to the grave violation of civilized norms required for an Eighth Amendment claim.  Defendant's Motion for Summary Judgment is GRANTED as to this issue.

I.  Hair and Beard Trimming Violations

Plaintiff claims that he is "physically forced to cut his hair and beard" in violation of his rights under the First Amendment of the United States Constitution, the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), and South Carolina Law.  Plaintiff's Motion to Object to Report and Recommendation of Magistrate Judge, 6 ¶¶ 32-34.  Plaintiff attaches copies of a Step 1 grievance form numbered "MSU-0090-03," id. at K-1 (found at entry 119-3, pp. 10-11), and a Step 2 form appealing the grievance committee's findings to substantiate his claim of administrative exhaustion.  Id. at K-1 (found at entry 119-3, p. 12).

As a threshold matter, Plaintiff improperly references the treatment of other prisoners in both his Step 1 and Step 2 forms.  Most notably, Plaintiff argues in his Step 2 appeal that he has witnessed "*other prisoners* being assaulted for failure to trim beards" in what he claims is a violation of his,

personal, "free exercise rights." Id. (emphasis added). Plaintiff concludes by stating, "I now *wish* to exercise my right to refuse any hair or beard cutting . . . [and] this makes you aware of the law . . . and liable for violating it." Plaintiff's Motion to Object to Report and Recommendation of Magistrate Judge, K-1, p. 2 (found at entry 119-3, p. 12) (emphasis added).

Plaintiff must allege that he, himself, sustained a deprivation of a right, privilege, or immunity secured to him by the Constitution and laws of the United States in order to state a civil rights claim upon which relief can be granted under § 1983. Inmates v. Owens, 561 F.2d 560, 562-63 (4th Cir. 1977). Plaintiff is not entitled to serve as "a knight-errant for all prisoners." Hummer v. Dalton, 657 F.2d 621, 625 -26 (4th Cir. 1981). Plaintiff's Step 2 appeal is not personal in nature and serves instead as a letter to prison officials outlining Plaintiff's feelings on the SCDC grooming policy as applied to other inmates. He has failed to exhaust his administrative remedies.

Even if Plaintiff had properly pleaded a violation of his rights, summary judgment is still appropriate as Plaintiff's claim fails as a matter of law. Though prisoners do not, in essence, abandon all constitutional rights at the prison's door, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). Recognizing that prison authorities are afforded great deference in fashioning prison policies and procedures, the specific SCDC grooming policy at issue was upheld as constitutional in Hines v. SCDC, 148 F.3d 353 (4th Cir. 1998). Defendants' Motion for Summary Judgment is GRANTED.


J. All Additional Claims

Plaintiff does not object or raises only conclusory objections to the Magistrate's Report

regarding all additional claims. Thus, the court adopts the Magistrate Judge's recommendation and concludes that Plaintiff's additional claims are hereby dismissed without prejudice for refiling if and when Plaintiff exhausts his administrative remedies.

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is **granted** as to ALL Claims against Defendants Bessinger, Maynard, McCoy, McKie, Stewart, Ozmint, Underwood, and Ward. Summary dismissal is **granted** for all claims against all defendants sued in their official capacities. Summary judgment is **granted** for all claims against remaining defendants sued individually for liability stemming from Hair/Beard Trimming, Food Service Deficiencies, June 28, 30, and August 25, 2003 incidents, July 21-March 4, 2001 solitary confinement, and the May 26, 2001 incident. Summary judgment is **denied** for all claims against Defendant Officers Reeves, Robinson, Peterson, Parker, Pallard, Binbow, Boulware, Latta, and Adams relating to the December 6, 2001 incident. Summary judgment is **granted** and all claims against all Defendants stemming from the extraction of Plaintiff from his cell on October 8, 2001. All claims stemming from the transportation of Plaintiff from his cell immediately following the October 8, 2001 extraction are DISMISSED without prejudice pending exhaustion. Summary judgment is **denied** for claims against Defendants Duckett and Murray arising from the alleged October 8, 2001 sexual assault. All remaining claims are DISMISSED without prejudice because Plaintiff has failed to exhaust his

administrative remedies as required under the PLRA.

**IT IS SO ORDERED**.

/s/ Margaret B. Seymour
Margaret B. Seymour
United States District Judge

Columbia, South Carolina
September 28, 2005